IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| RACHEAL PAUL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>IMCMV HOLDINGS, INC. a Florida corporation,<br><br>*Defendant*. | No. 6:23-cv-00223<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Racheal Paul ("Plaintiff" or "Paul") brings this Class Action Complaint and Demand for Jury Trial against Defendant IMCMV Holdings, Inc. ("IMCMV") to stop the Defendant from violating the Telephone Consumer Protection Act by sending telemarketing text messages without consent to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC") and to consumers who have specifically asked the Defendant to stop texting them. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Racheal Paul is a resident of Athens, Georgia.

2. Defendant IMCMV is a Florida corporation headquartered in Orlando, Florida. Defendant IMCMV conducts business throughout this District and parts of the U.S.

## JURISDICTION AND VENUE

3. This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and the Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides in this District, and conduct giving rise to this case was directed by the Defendant from this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress

2

have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

9. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in January 2023 alone, at a rate of 145.5 million calls per day. www.robocallindex.com (last visited February 5, 2023).

10. The FCC also has received an increasing number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Defendant IMCMV owns and operates Margaritaville venues throughout the U.S, including Margaritaville Syracuse.[3]

14. Defendant IMCMV sends out text messages to consumers in order to solicit business for their Margaritaville branded venues.

15. Defendant sends out these text messages using the phone number 315-217-6082 and other phone numbers based on the Margaritaville location.

16. The program for sending out text messages is controlled by Defendant on behalf of its individual locations.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/margaritaville/about/

4

17. Defendant sends out these unsolicited text messages to phone numbers that are listed on the DNC and who never gave consent to receive such text messages from the Defendant.

18. To make matters worse, Defendant IMCMV's system continues to send text messages to consumers even after they have explicitly opt-ed out of receiving these text messages.

## PLAINTIFF PAUL'S ALLEGATIONS

19. Plaintiff Paul registered her cellular phone number ending in 2165 on the DNC on April 22, 2014.

20. Plaintiff Paul uses her cellular phone number for personal use only, like one would use a landline in their home. It is not used for any business-related purposes.

21. On January 29, 2023, Plaintiff Paul received 2 unsolicited text messages from Defendant from the phone number 315-217-6082 at 8:30 AM:



22. Plaintiff never signed up to receive these text messages.

23. The text messages are clearly solicitations in that the Defendant is offering a free appetizer if the Plaintiff would visit the Defendant's restaurant.

24. In response to the text messages, Plaintiff texted "Stop" to 315-217-6082 at 11:29 AM on January 29, 2023 as instructed by the text message itself.

25. Despite her stop request, Plaintiff Paul received a 3rd unsolicited text message from Defendant, from 315-217-6082 at 11:30 AM on January 29, 2023:



26. Again, Plaintiff texted "Stop" to 315-217-6082 at 11:31 AM on January 29, 2023, but in reply Plaintiff received a 4th unsolicited text message from the Defendant from 315-217-6082 also at 11:31 AM:



27. Plaintiff read the first 2 unsolicited text messages that she received, one of which indicated that she could stop the texts by replying 'STOP.' At 11:32 AM on January 29, 2023, Plaintiff texted "STOP" to 315-217-6082. In response, Plaintiff received a 5th unsolicited text message from the Defendant from 315-217-6082 also at 11:32 AM:



28. Frustrated because she couldn't stop the unsolicited text messages, Plaintiff texted "I will report this" to 315-217-6082 at 11:33 AM on January 23,

8

2023. In response, Plaintiff received a 6th unsolicited text message from Defendant on January 23, 2023 at 11:33 AM:



29.     These subsequent text messages were solicitations in that the text message continues to encourage the consumer to use their Margaritaville Rewards program so that the consumer will continue to frequent and spend money at the Defendant's venues.

30.     Plaintiff Paul has never done business with Defendant and has never provided her cell phone number to Defendant.

31.     The unauthorized text messages placed by Defendant, as alleged herein, have harmed Plaintiff Paul in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

32. Plaintiff believes that others consumers are facing similar issues since she never signed up for Defendant's services to begin with and the opt-out procedure automatically generated new text messages for anyone who attempted to opt-out of their text message program.

33. Seeking redress for these injuries, Plaintiff Paul, on behalf of herself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited telemarketing text messages to phone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

34. Plaintiff Paul brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time on their residential number, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendant called Plaintiff.

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called more than one time on their residential number, (2) within any 12-month period, (3) for substantially the same reason that Defendant called Plaintiff, (4) including at least once after the person requested that Defendant or its agent to stop calling.

10

35. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

36. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant sent multiple text messages to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to send the texts;

(b) whether Defendant or their agents sent multiple text messages to Plaintiff and members of the Internal Do Not Call Class including at least once after the consumer requesting Defendant or their agents to stop sending text messages;

(c) whether the text messages violated the TCPA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

38. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither the Plaintiff nor her counsel have any interest adverse to the Classes.

39. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform

relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Paul and the Do Not Call Registry Class)**

40. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

41. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

42. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

43. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

44. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call/text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227©, are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

45. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of

statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Paul and the Internal Do Not Call Class)

46. Plaintiff repeats and realleges paragraphs 1 through 35 of this Complaint and incorporates them by reference herein.

47. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a

15

party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

48. Defendant, or an agent calling on behalf of Defendant sent text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be txted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing

16

text messages.

49. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

50. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Paul individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)  An injunction requiring Defendant to cease all unsolicited text message activity, and to otherwise protect the interests of the Classes; and

e)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Paul requests a jury trial.

DATED this 19th day of March, 2023.

        **RACHEAL PAUL**, individually and on behalf of all others similarly situated,

        */s/ Stefan Coleman*
        Stefan Coleman
        Coleman PLLC
        66 West Flagler Street, Suite 900
        Miami, FL 33130
        Telephone: (877) 333-9427
        law@stefancoleman.com

        Avi R. Kaufman*
        KAUFMAN P.A.
        237 South Dixie Highway, Floor 4
        Coral Gables, FL 33133
        Telephone: (305) 469-5881
        kaufman@kaufmanpa.com

        *Lead Counsel

        *Counsel for Plaintiff and all others similarly situated*